PIGGLY WIGGLY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25126, 43860. Promulgated June 20, 1933.

*Homer K. Jones, C.P.A.*, and *Frank J. Albus, Esq.*, for the petitioner.
*De Witt Evans, Esq.*, for the respondent.

414

416

OPINION.

LANSDON: In their stipulation of facts the parties to this dispute have agreed that the petitioner suffered losses of various characters in the aggregate of $2,137,155.84 and that this sum is composed of items which they have classified in three groups, as follows:

(a) $201,433.48 represents the so-called misappropriated or embezzled funds not discharged in bankruptcy.

(b) $700,216.52 represents the amount that the court held was legally expended by Saunders on marginal accounts for the petitioner, which subsequently became lost.

(c) $1,235,505.84 represents the amounts expended by Saunders beyond the scope of his authority but not considered misappropriated or embezzled within the purview of the Bankruptcy Act.

Although the stipulation shows that the conversions referred to in groups (a) and (b) above set forth, and all except $809,120.84 of group (c), took place in 1922, the petitioner contends that its losses resulting from them should be attributed to 1923 for the reason, as it further claims, that it did not learn of such losses until the latter year. It also contends that all of such losses were sustained by it in the conduct of a trade or business regularly carried on by it under circumstances which produced a net loss in its income within the meaning of the taxing statutes.

Considering these groups in their order, the first (a) consisted of embezzled funds which the petitioner's president, Saunders, because of his having charge of its investment business with the brokers, was able to collect and convert to his own use. Three acts of Saunders committed in the fall months of 1922 accomplished this conversion, viz.; his causing, at different dates in September, of funds in the hands of brokers belonging to petitioner in the aggregate of $57,572.48 to be transferred to his own account with said brokers, and his receipt from brokers on October 2 and November 14, 1922, of checks payable to the petitioner for $76,285.80 and $67,575.09 which he deposited to his own private account.

From the proof in the record we are unable to determine whether or not the petitioner knew of its loss prior to 1925; however, in the view we take of the character of the losses, it is immaterial when that knowledge first became manifest. All resulted from the direct appropriation or squandering by Saunders of the petitioner's credits and funds. The bankruptcy court found that those assembled in group (a) above, were appropriated by Saunders under circumstances which amounted to embezzlement; but, that the funds represented in group (b) were subsequently lost, after having been legally invested by Saunders in marginal accounts for the petitioner. The record shows that the marginal accounts referred to in this item were illegally converted by Saunders to his own use in September 1922, when he founded the investors' pool, and that they became as effectually lost to the petitioner at that time as did the funds embezzled in group (a). The same may be said of the $1,235,505.84 in expenditures set out in group (c), $426,385 of which was withdrawn from petitioner's treasury in 1922 and the balance in 1923. All of these were direct losses which resulted at the instant the funds and credits involved were improperly diverted or converted. *Emil Stern*, 5 B.T.A. 89; *Peterson Linotyping Co.*, 10 B.T.A. 542; *Southern School-Book Depository, Inc.*, 10 B.T.A. 930; *Parker Wire Goods Co.*, 8 B.T.A. 448; *John H. Farish*, 7 B.T.A. 793; *Douglas County Light & Water Co.*, 14 B.T.A. 1052; *United States* v. *White Dental Mfg. Co.*, 274 U.S. 398. We therefore hold that all of the losses here in issue, excepting $809,120.84, were sustained by the petitioner in 1922; and that losses equal to the latter amount (included in group (c)) occurred in 1923.

We think from the record made that the petitioner's contention that the losses here considered were sustained by it in the prosecution of its regular business must likewise be sustained. The respondent insists that the petitioner's marginal stock dealings in 1922 were not a part of its regular business and for this reason the funds of petitioner embarked in these ventures should not be regarded as

having been employed in such business in 1922. To this suggestion we might reply that none of the petitioner's money was lost in the stock transactions. Whether these were properly a part of petitioner's business or not, the record shows that it derived some profit from all of them where purchases and sales were made. The petitioner sustained no losses from these dealings, but from Saunders' misappropriation of its equities in stocks purchased and of its funds deposited on marginal balances and in its treasury. All of these were assets of the petitioner which Saunders controlled by virtue of his official position as its president and business manager. In these circumstances it is clear that these assets were at risk in the petitioner's regular business and their loss under these circumstances must be regarded as having been sustained in its conduct. *E. M. Elliott*, 15 B.T.A. 494; *Maude Enella Brickell*, 17 B.T.A. 711; *Harvey H. Ostenberg et al., Administrators*, 17 B.T.A. 738; *Elmore L. Potter*, 18 B.T.A. 549.

The parties have stipulated that the petitioner is entitled to additional deductions for patent exhaustion of $5,000 for each of the years 1922 and 1923 and additional deductions on like account of $92.01 for each of the years 1924, 1925, and 1926.

Reviewed by the Board.

*Decision will be entered under Rule 50.*